IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER LEWIS,<br><br>                Petitioner,<br><br>vs.<br><br>HAROLD GRAHAM, Superintendent,<br>Auburn Correctional Facility,<br><br>                Respondent. | No. 9:16-cv-01507-JKS<br><br>MEMORANDUM DECISION |

Walter Lewis, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Lewis is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Auburn Correctional Facility. Respondent has answered the Petition, and Lewis has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 28, 2011, Lewis was charged with first-degree criminal sex act, second-degree assault, third-degree criminal possession of a weapon, two counts of third-degree assault, and second-degree unlawful imprisonment. The charges stemmed from incidents in November 2010, when Lewis was alleged to have struck his ex-girlfriend, causing a 30% hearing loss, and in January 2011, when Lewis allegedly struck the victim with an electrical cord, coerced her to engage in oral sexual conduct, and held her against her will for hours.

Prior to trial, the prosecution moved to admit a 911 call as proof that the victim promptly reported her sexual assault. The court noted that it would determine the admissibility of the 911

call at trial depending on the victim's testimony. The prosecution subsequently sent a letter to the court asking to admit certain portions of the 911 call under the excited utterance exception. Prior to voir dire, the court addressed the admissibility of the call and held:

> The conversation, itself, indicates that it was a very traumatic experience, that the phone call, the 911 call occurred within a very short time after she fled that apartment, and that she still—that she was under the distress of that circumstance and that there was not an opportunity for, let's say, deliberation or fabrication. It is an excited utterance from the very nature of the tape, and I conclude that taking all of the circumstances as a whole, as reflected in the tape, that it showed the complainant was still under the influence of that event and that it is an excited utterance and it would be admissible on that basis. That's the ruling of the Court regarding that.

At trial, the victim testified that she began dating Lewis in the summer of 2010 but they were no longer getting along by the fall. Around Thanksgiving, she told Lewis to pack his things and leave her apartment, but he refused and struck her multiple times in the face and ears. Five or six days later, the victim went to an urgent care complaining of pain in her ear, and later saw an otolaryngologist for further treatment. On January 9, 2011, the victim came home after a night out with friends, where Lewis came up behind her and forced himself into her apartment and bedroom. Lewis demanded that she perform oral sex on him, and after repeated refusals, the victim complied. Lewis then retrieved an electrical cord, which he used to whip the victim's body. She testified that she and Lewis stayed in the bedroom for about two hours. When she left the bedroom, Lewis's friend Jonathan Brown was sitting on the couch. The victim drove the two men to Lewis's apartment, but Lewis stayed inside the car and demanded that the victim drive him on various errands. They first went to the home of Lewis's uncle, James Hill, where the victim waited in the car while Lewis spoke with Hill in Hill's doorway. The victim next drove to Price Chopper, where Lewis and the victim went shopping for groceries, and then returned to the victim's apartment. Eventually, Lewis fell asleep and the victim gathered belongings and left

the apartment. She drove away and called 911 shortly thereafter. Officer Shannon Einbeck of the Syracuse Police Department also testified about taking the victim's statement and photographing her arm and face. The prosecution also presented the testimony of the otolaryngologist and a forensic examiner.

Hill testified on Lewis's behalf that the victim did not appear upset or injured when he saw her on January 9, 2011, nor did she drive or run away when she had the opportunity to do so. Brown testified that he was at the victim's apartment on January 9, 2011, prior to her return from the night out. According to Brown, Lewis and Brown entered the apartment using Lewis's key, and that, when the victim returned home, she kissed Lewis and agreed to drive the two men that day. Brown testified that they left roughly two minutes after the victim's return, so Lewis could not have assaulted her at the apartment. Lewis's sister-in-law testified that she gave Lewis $1,200 after Christmas, and his niece testified that, when she retrieved Lewis's belongings from the victim's apartment roughly two weeks after his arrest, Lewis's wallet had no money in it.

Upon the conclusion of trial, the jury found Lewis guilty as charged, and the trial court adjudicated Lewis a second violent felony offender. The court sentenced Lewis to an aggregate term of 15 years' imprisonment, to be followed by 15 years of post-release supervision.

Lewis filed a *pro se* motion to vacate his conviction, pursuant to New York Criminal Procedure ("CPL") § 440.10, on the grounds that: 1) the court lacked jurisdiction over his case; 2) the grand jury process was defective; and 3) the form of the indictment was improper. The court held that the claims relied on matters of record that he could raise on appeal and that, "[i]n any event, . . . [the] motion is both legally and factually insufficient to warrant the relief

requested . . . ." Lewis sought leave to appeal the denial, which the Appellate Division of the New York Supreme Court denied without comment on November 3, 2014.

Through counsel, Lewis appealed his conviction, arguing that: 1) the trial court improperly admitted certain portions of the victim's 911 call pursuant to the excited utterance and prompt outcry exceptions to the hearsay rule; 2) the trial court erred in permitting the otolaryngologist who examined the victim to testify that the victim reported being hit by Lewis; and 3) the verdict was against the weight of the evidence and not supported by legally sufficient evidence. The Appellate Division unanimously affirmed the judgment against Lewis in a reasoned opinion issued on June 12, 2015. *People v. Lewis*, 12 N.Y.S.3d 678, 680 (N.Y. App. Div. 2015). Lewis sought leave to appeal to the New York Court of Appeals, which was summarily denied on September 13, 2015. *People v. Lewis*, 40 N.E.3d 583, 583 (N.Y. 2015).

Lewis again moved to vacate the judgment of conviction. In that *pro se* filing, Lewis averred: 1) the court never obtained jurisdiction over his case; 2) the prosecutor elicited perjury in the grand jury and at trial; 3) the prosecutor failed to disclose material evidence to the defense; 4) trial counsel was ineffective; and 5) Lewis is actually innocent. The county court denied the motion, finding that Lewis could have raised the claims on direct appeal or in his prior § 440.10 motion. Lewis sought leave to appeal the decision, which the Appellate Division denied without comment on June 6, 2017.

While his second § 440.10 motion was pending in state court, Lewis timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on December 13, 2016. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

4

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Lewis raises four grounds for relief. First, Lewis argues that the state trial court lacked jurisdiction over the felony complaint against him. He next contends that the prosecution elicited perjury both during the grand jury proceedings and at trial. Third, Lewis avers that trial counsel rendered ineffective assistance. Finally, Lewis claims that he is actually innocent of the crimes for which he was convicted.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.    *Jurisdictional Defect*

Lewis first argues that the state court lacked jurisdiction over his case because the felony complaint against him was not executed under oath. However, "whether an indictment . . . is sufficient to confer jurisdiction on a trial court is an issue of state law[.]" *Sengupta v. Att'y Gen.*, No. 16-CV-6967, 2019 WL 4308610, at *16 (S.D.N.Y. Sept. 11, 2019) (internal quotation marks and citations omitted). Thus, Lewis's claim seeks relief exclusively on state law grounds, which are not cognizable before this Court on review for federal habeas relief. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied); *Estelle*, 502 U.S. at 67-68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"). Lewis is thus not entitled to relief on this ground.

Ground 2.    *Presentation of Perjury*

Lewis next contends that the prosecution presented false evidence in both the grand jury and at trial. Specifically, Lewis complains that the prosecutor did not introduce evidence that Lewis and the victim went to Aldi's on the morning of the assault.

As an initial matter, to the extent Lewis avers that the prosecution suborned perjury in the grand jury proceedings, his subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

Nor is Lewis entitled to relief on his contention that the prosecution elicited perjury at trial. A prosecutor has a duty of candor in court and an enduring obligation to pursue the truth. *See, e.g., United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998). "[T]he knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'" *United States v. Bagley*, 473 U.S. 667, 680 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 104 (1976)). It is well-established that a conviction must be side aside if "(1) 'the prosecution knew, or should have known, of the

perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (footnote omitted; quoting *Agurs*, 427 U.S. at 103). Here, however, Lewis fails to show that the prosecutor offered false testimony at trial or that, if the testimony was false, that the prosecution knew that it was untrue or that it affected the judgment against him. Lewis is thus not entitled to relief on this ground either.

Ground 3.   *Ineffective Assistance of Counsel*

Lewis additionally asserts that trial counsel rendered ineffective assistance for failing to present an alibi evidence. Specifically, Lewis faults counsel for failing to present proof, in the form of a receipt, store loyalty card, and testimony, that Lewis was at Aldi's on the morning of the assault.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Lewis must show that his attorneys did not represent him within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for their ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474

9

U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only

10

demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Lewis's ineffective assistance claims must fail, however, even under the more favorable New York standard. Indeed, the record reflect that counsel argued that the jury should not credit the victim's because she did not tell the police that she and Lewis had visited Aldi's in addition to Price Chopper on the morning of the assault. After counsel's questioning, the victim stated that she and Lewis went to Aldi's, and defense counsel vigorously questioned her about her inability to recall details of their visit. Counsel used the victim's vague testimony about the Aldi's trip to argue that she was not credible. Lewis fails to show that the identified evidence would have changed the outcome of the trial because their trip to Aldi's did not exonerate him or make it physically impossible for the assault to have happened. Lewis thus fails to show either deficient performance or prejudice, and he is not entitled to relief.

Ground 4.    *Actual Innocence*

Finally, Lewis claims that he is innocent of the crimes for which he was convicted. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding

claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Lewis has fallen far short of establishing his actual innocence. In support of this claim, Lewis alleges that the complaining witness fabricated the claims against him. But as discussed in Ground 3, *supra*, he points to no evidence that exonerates him of the crime, but rather challenges the credibility and value of the evidence against him by pointing to inconsistencies in the victim's statements and evidence on an

12

ancillary matter, the alleged Aldi's visit. Construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Petition therefore argues that the evidence against him is legally insufficient to sustain his convictions. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter

13

of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Here, Lewis attacks the value of the evidence against him, primarily claiming that the witness lacks credibility because she did not initially testify that they went to Aldi's on the morning of the assault. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Although it might have been possible to draw a different inference from the conflicts in the evidence offered by each side, this Court is required to resolve that conflict in favor of the prosecution, whose theory of the case prevailed with the jury. *See Jackson*, 443 U.S. at 326. In this case, the victim testified that Lewis assaulted her, forced her to perform sexual acts on him, and took her against her will for several hours. Although she was the sole witness to the crime, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979). The evidence presented

at trial was thus sufficient to support Lewis's conviction, particularly given the deference required under *Jackson*. Accordingly, Lewis is not entitled to relief on this ground in any event.

## V. CONCLUSION

Lewis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 6, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
